UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SOUTH CAPITOL BRIDGEBUILDERS, <br><br> Plaintiff, <br><br> v. <br><br> LEXINGTON INSURANCE COMPANY, <br><br> Defendant. | Case No. 1:21-cv-01436-RCL <br><br> Honorable Royce C. Lamberth |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Federal Rule of Civil Procedure 56(c) and Local Civil Rule 7(h), Plaintiff South Capitol Bridgebuilders ("SCB") submits this statement of material facts as to which there is no genuine issue in support of its motion for partial summary judgment as to Count I of the complaint, filed concurrently herewith.

**The Parties**

1.  SCB is a joint venture of Archer Western Construction, LLC ("Archer") and Granite Construction Company ("Granite"). *See* Complaint (ECF 1), attached as **Exhibit A**, ¶ 4; Answer of Defendant Lexington Insurance Company (ECF 22), attached as **Exhibit B**, ¶ 4.

2.  Archer is an Illinois limited liability company with three members: (a) the Matthew M. and Margaret B. Walsh Trust for the Benefit of the Matthew M., Jr. and Joyce S. Walsh Family (the "M. Walsh Trust"), (b) the Matthew M. and Margaret B. Walsh Trust for the Benefit of the Daniel J. and Patricia R. Walsh Family (the "D. Walsh Trust"), and (c) Walsh Construction Group, LLC ("WCG"). E. Bryan Dunigan, a citizen of Illinois, is the trustee of both the M. Walsh Trust and the D. Walsh Trust. WCG is an Illinois limited liability company. Its members are the M.

Walsh Trust, the D. Walsh Trust, Erin Gibbons, Brian R. Walsh, Daniel P. Walsh, Margaret H. Walsh, Matthew M. Walsh, IV and Sean C. Walsh, each of whom is a citizen of Illinois. Therefore, Archer is a citizen of Illinois. *See* Ex. A ¶ 5.

3. Granite is a California corporation with its principal place of business in California. Therefore, Granite is a citizen of California. *See* Ex. A ¶ 6.

4. As a joint venture of Archer and Granite, SCB is a citizen of Illinois and California. *See* Ex. A ¶ 7.

5. Lexington Insurance Company ("Lexington") is a Delaware corporation with its principal place of business in Massachusetts. It is a citizen of Delaware and Massachusetts. *See* Ex. B ¶ 8.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because SCB and Lexington are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* Ex. A ¶ 9; Ex. B ¶ 9.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims that are the subject of this litigation occurred within this judicial district. *See* Ex. A ¶ 10; Ex. B ¶ 10; Memorandum Opinion and Order (ECF 39), attached as **Exhibit C**, at 4.

## The Policy

8. In or around 2017, Lexington issued to SCB a builder's risk insurance policy bearing policy number 085053861 (the "Policy"), effective from July 13, 2017 to January 1, 2022. *See* Ex. A ¶¶ 2, 11; Ex. B ¶¶ 2, 11; Completed Value Builders Risk Policy (ECF 1-1), attached as **Exhibit D**, at 2.

9. The Policy was negotiated by SCB representatives in Chicago and delivered to SCB in Chicago. SCB paid premiums due under the contract from its Chicago headquarters. *See* Ex. A ¶¶ 10, 43; Ex. B ¶¶ 10, 43; Ex. C at 2, 5, 7; Ex. D at 2.

10. SCB, Archer and Granite were named insureds under the Policy. *See* Ex. D at 2-3.

11. The Policy referred to Lexington as "the Company." *See* Ex. D at 2.

12. Through the Policy, Lexington agreed to "insure[] against all risks of direct physical loss of or damage to insured property while at the location of the Insured Project, while in offsite temporary storage[,] or while in inland transit[,]" to the extent such loss or damage occurred within the policy territory and during the policy term. *See* Ex. D at 9.

13. The Policy defined "Property Insured" to include Permanent Works and Temporary Works. *See* Ex. D at 9.

14. The Policy defined "Permanent Works" as:

> All materials, supplies, equipment, machinery, and other property of a similar nature, being property of the Insured or of others for which the Insured may be contractually responsible, the value of which has been included in the estimated value of the Insured Project in the Declarations, all when used or to be used in or incidental to the demolition of existing structures, site preparation, fabrication or assembly, installation or erection or the construction of or alteration, renovation, rehabilitation of the Insured Project.

*See* Ex. D at 9.

15. The Policy defined "Temporary [W]orks" as "[a]ll scaffolding, form work, fences, shoring, hoarding, falsework and temporary buildings all incidental to the project and the value of which has been included in the estimated value of the Insured Project in the Declarations." *See* Ex. D at 9.

16.     The Policy defined the "Insured Project" as "the work which the Insured is contractually obligated to perform in accordance with the contract documents being more fully described and located as set forth in the Declarations." *See* Ex. D at 18.

17.     The Declarations stated that the Insured Project was located at "Frederick Douglas [*sic*] Memorial Bridge, District of Columbia" and described the Insured Project, in pertinent part, as "replacing the existing Frederick Douglass Memorial Bridge and its approaches with a new bridge and approaches, including also the demolition of the old Frederick Douglass Memorial Bridge …." *See* Ex. D at 7, ¶¶ 8-9.

18.     The Policy insured the new Frederick Douglass Memorial Bridge as it was being constructed. *See* Ex. D at 9, 18; Deposition of John Catania, attached as **Exhibit E**, at 53:19-24, 79:4-11.

19.     SCB's premium was calculated based on the estimated completed value of the insured project, $482,286,002. *See* Ex. D at 7. The value of the coverage provided under the Policy increased as the bridge got closer to completion. *See* Ex. E at 87:24-88:10.

20.     Part B of the Policy, titled "Exclusions," provided, in relevant part:

>   1.  **PERILS EXCLUDED:**
>
>       This policy shall not pay for loss, damage or expense caused directly or indirectly by any of the following.
>
>       […]
>
>       B.  Faulty or defective workmanship or materials, unless direct physical loss or damage by an insured peril ensues and then this policy will cover for such ensuing loss or damage only;
>
>       C.  Fault, defect, error, deficiency or omission in design, plan or specification, unless direct physical loss or damage by an insured peril ensues and then this policy will cover for such ensuing loss or damage only;

[…]

*See* Ex. D at 14.

21. The Policy included an endorsement entitled "LEG 3 Defect Extension." *See* Ex. D at 3, 39.

22. The LEG 3 extension "modifie[d] insurance provided by the Policy." *See* Ex. D at 39.

23. Specifically, the LEG 3 extension provided:

> Perils Excluded, Item C. is deleted and replaced by the following:
>
> All costs rendered necessary by defects of material workmanship, design, plan, or specification and should damage (which for the purposes of this exclusion shall include any patent detrimental change in the physical condition of the Insured Property) occur to any portion of the Insured Property containing any of the said defects, the cost of replacement or rectification which is hereby excluded is that cost incurred to improve the original material workmanship design plan or specification.
>
> For the purpose of this policy and not merely this exclusion it is understood and agreed that any portion of the Insured Property shall not be regarded as damaged solely by virtue of the existence of any defect of material workmanship, design, plan, or specification.

*See* Ex. D at 39.

### SCB's Claim

24. The design for the new bridge to be constructed as part of the Insured Project included cast-in-place concrete substructure elements and a composite deck supported by three consecutive steel arches on each side of the bridge. The steel arches are supported on concrete abutments on the east and west sides of the Anacostia River and on two concrete V-shaped piers ("V-Piers") that are also in the Anacostia River. *See* Ex. A ¶ 20; Ex. B ¶ 20.

25. The V-piers and abutments were Permanent Works under the Policy. *See* Ex. A ¶ 21; Ex. B ¶ 21. The concrete, steel and other materials used to construct the abutments and V-piers were also Permanent Works under the Policy. *See* Ex. D at 9.

26. SCB began construction work on the Insured Project in the summer of 2017. *See* Ex. A ¶ 22; Ex. B ¶ 22.

27. To construct the West Abutment and North and South V-Pier 1s, SCB used various materials and supplies, including concrete, steel rebar, pipe pile, and formwork. *See* Ex. A ¶ 23; Ex. B ¶ 23; Deposition of South Capitol Bridgebuilders (E. Hayes), attached as **Exhibit F**, at 23:21-24:2, 27:13-32:21. Formwork consists of molds used to give the concrete its desired shape. *See* Ex. F at 29:21-30:10.

28. Between August 8, 2019 and September 4, 2019, SCB poured the concrete used to construct the West Abutment and the North and South V-Piers. *See* Ex. A ¶ 24; Ex. B ¶ 24.

29. At the time of the concrete pours giving rise to SCB's claim, several portions of the bridge's load-bearing elements had already been constructed and were in use, bearing the weight of the bridge. *See* Ex. F at 46:7-47:7, 55:1-8.

30. Due to the magnitude of the structure, SCB completed several concrete pours, or "placements," successively, gradually adding on to the single, continuous structure comprising the abutment and piers. SCB's construction process entailed pouring concrete into the formwork and waiting for the concrete to cure before moving on to the next placement. *See* Ex. F at 25:16-29:20.

31. Within the concrete, supporting structures, such as reinforcing steel (rebar) and pipe piles, were continuous from one pour through the next, all the way down to the bridge's footing. *See* Ex. F at 27:18-28:10, 30:17-32:21, 38:3-40:6.

32. As the concrete was placed, workers inside the formwork vibrated the concrete to ensure that it was distributed consistent with the bridge design. However, it was not feasible to have workers within the formwork to vibrate the concrete at the tips of the abutments and V-Piers. Access holes were created in the sides of the formwork to enable the concrete to be vibrated at the top layers of the abutments and V-Piers. *See* Ex. A ¶ 25; Ex. B ¶ 25.

33. The concrete poured to construct the West Abutments and the V-Piers had to set before the formwork could be removed. *See* Ex. A ¶ 26; Ex. B ¶ 26; Ex. F at 29:17-30:10, 33:9-16.

34. After the formwork was removed, SCB discovered areas of porosity in the concrete known as "honeycombing." Significant honeycombing, called "voiding," caused weakness in the concrete. Ex. A ¶ 27; Ex. B ¶ 27; Ex. E at 35:24-36:21; Ex. F at 34:4-35:20, 37:18-38:2. After the flawed concrete was appended to the existing load bearing sections of the bridge, the structure was no longer able to support the weight of the bridge. *See* Ex. F at 53:5-55:21, 58:10-59:4.

35. The voiding was readily observable, with voids measuring several feet wide and deep visible to the naked eye. *See* Ex. F at 37:18-38:2; DeSimone Consulting Investigation Report (ECF 1-2), attached as **Exhibit G**, at 6-7, 18, 20-22, 24-25.

36. On or about October 24, 2019, SCB tendered its claim for damage to the V-Piers and West Abutment to Lexington. *See* Ex. A ¶ 33; Ex. B ¶ 33.

37. Lexington requested an opportunity to investigate the loss and engaged DeSimone Consulting Engineers ("DeSimone") to investigate on its behalf. SCB cooperated with DeSimone and provided DeSimone with the access it requested to complete its investigation of the cause of the loss. *See* Ex A ¶¶ 35-36; Ex. B ¶¶ 35-36.

38. On February 18, 2020, DeSimone issued a report of its findings, including its conclusions that honeycombing occurred in the west abutment and V-pier 1s and that "[t]he honeycombing that occurred in the abutments and piers was most likely caused by inadequate vibration/consolidation during placement and should be considered a workmanship issue." *See* Ex. G at 12.

39. SCB repaired the damage to the West Abutment and V-Piers, incurring expenses in excess of $2.2 million as a result. *See* Ex. A ¶ 41; Ex. B ¶ 41; Ex. F at 38:3-40:6; Itemization of Builder's Risk Claim (SCB_000194), attached as **Exhibit H**.

40. SCB demanded reimbursement from Lexington, pursuant to the Policy, for the repairs undertaken to rectify the damage to the West Abutment and V-Piers. *See* Ex. A ¶ 42; Ex. B ¶ 42.

41. SCB met each of its obligations under the Policy in connection with the claim. *See* Ex. A ¶ 43; Ex. B ¶ 43.

## Lexington's Denial

42. Nonetheless, on April 9, 2020, Lexington denied SCB's claim. *See* Ex. A ¶ 44; Ex. B ¶ 44; Letter from J. Catania to J. Slattery (ECF 1-3), attached as **Exhibit I**.

43. In its denial, Lexington took the position that the loss claimed by SCB was not covered because: (1) The abutments and V-piers requiring repair "were never placed into use or incorporated into non-defective components of the Bridge and never caused damage to any other property;" and (2) "The LEG 3 Extension precludes coverage for '[a]ll costs rendered necessary by defects of material workmanship, design, plan, or specification.'" *See* Ex. I at 4-5.

44. On or around April 27, 2020, SCB responded to Lexington's denial letter, requesting that Lexington reconsider its position, identifying the errors in Lexington's coverage

8

analysis and citing the findings of the DeSimone report. *See* Letter from G. Peoples to J. Catania dated April 27, 2020, attached as **Exhibit J**.

    45.    On or around May 18, 2020, Lexington again denied SCB's claim. *See* Ex. A ¶ 47; Ex. B ¶ 47.

Dated: September 15, 2022                          Respectfully submitted,

                                                                   SOUTH CAPITOL BRIDGEBUILDERS

                                                                    /s/ *David B. Goodman*

David B. Goodman (Bar ID IL0081)
dg@glgchicago.com
Carrie E. Davenport
cd@glgchicago.com
Kalli K. Nies
kn@glgchicago.com
GOODMAN LAW GROUP | Chicago
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
T: 312-626-1890

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2022, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of Court using CM/ECF, which will send electronic notification to the parties and registered attorneys of record that the document has been filed and is available for viewing and downloading.

/s/ *David B. Goodman*